**Ken E. WILDBUR, et al.**

v.

**The ATLANTIC RICHFIELD RETIREMENT PLAN, et al.**

**Civ. A. No. 88–2404.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Feb. 27, 1991.

---

Mark J. Ostrich, Joseph A. Koury, Lafayette, La., for plaintiffs.

Robert K. McCalla, New Orleans, La., for defendants.

## MEMORANDUM RULING GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

EDWIN F. HUNTER, Jr., Senior District Judge.

Between 1984 and 1987, defendant Atlantic Richfield Company ("ARCO") reorganized and consolidated its operations by terminating employees, and by selling certain assets and divisions to other companies. In connection with that ongoing reorganization, ARCO added an enhanced retirement benefit to the Atlantic Richfield Retirement Plan ("ARRP"). This provision, Section 35, provided enhanced retirement benefits to an employee who, through no fault of his own, was terminated. The employee was given the option of choosing between the enhanced retirement benefits along with a reduced severance payment under the Special Termination Allowance Plan ("STAP") or accepting regular severance payments under the STAP.

On December 19, 1986 ARCO, sold its building products, Chemlink Petroleum, and specialty chemical units to Pony Industries, Inc. ("Pony"). Plaintiffs, employees of Chemlink Petroleum, seek those enhanced retirement benefits provided in Section 35, as well as severance payments under Schedule M of the STAP.

Counsel for both parties have filed numerous pleadings including cross-motions for summary judgment. Oral arguments on the motions were heard on February 8, 1991 as follows.

### Statement of Undisputed Material Facts

We carefully considered the Statements of Undisputed Material Facts filed by both parties, and the oppositions in response. We conclude that the record reveals the following material facts:

1. This action was filed on September 2, 1988 in the Fifteenth Judicial District Court, Parish of Lafayette, Louisiana, by plaintiffs Ken E. Wildbur and seventy-six other individuals against the Atlantic Richfield Company, ARCO Chemical Company, Chemlink Petroleum, Inc., The Atlantic Richfield Retirement Plan, and its Trustees, for the recovery of certain benefits under Section 35 of the ARRP and benefits under Schedule M of the STAP as an alleged result of their "transfer" of employment from Atlantic Richfield to Pony Industries in December of 1986. This suit, being governed by the Employment Retirement Income Security Act, was removed to this Court.

2. Plaintiffs were salaried employees of Chemlink Petroleum, Inc., a subsidiary of the Atlantic Richfield Company.

### The Plan

3. The Atlantic Richfield Retirement Plan is qualified under Section 401(a) of the Internal Revenue Code and is administered by ARCO. The ARRP is an ERISA funded, defined benefit plan paying retirement benefits to plan participants and beneficiaries.

4. The ARRP was amended in May, 1986 adding Section 35.

5. Employees terminated during the Section 35 window period had the option of electing benefits under Section 35, along with reduced STAP benefits, or foregoing Section 35 benefits and electing regular severance benefits under the STAP.

6. ARRP Section 35 ERP eligibility is governed by applicable eligibility criteria as set forth in Section 35.2.

7. If eligible for Section 35 benefits, an employee's retirement benefits were enhanced by (1) crediting him with an additional five years of service for purposes of benefit vesting, eligibility, and accrual; (2) adding five years to his actual age; and (3) augmenting the employees' final base pay calculations, thereby increasing the ultimate monthly retirement benefit.

### STAP

8. The Special Termination Allowance Plan is an ERISA Employment Welfare Benefit Plan paying severance benefits to certain employees whose service with ARCO ceases as a result of involuntary termination of employment.

9. In addition to the so-called "core" plan of STAP, a term not defined in the plan, ARCO has added special sections which set special payment schedules and eligibility requirements for certain specified groups of employees.

10. STAP was amended on May 6, 1986 to add Schedule M Special Benefit Provisions.

11. The special benefit provisions Schedule M, found in Amendment Number 12 to the Atlantic Richfield Special Termination Allowance Plan incorporates all provisions of the Plan to the extent they are not inconsistent with Schedule M.

12. Paragraph 4.1(b) of the STAP specifically provides a termination of employment "will not be deemed to have occurred if the employee continues in the employment of a company that purchases a subsidiary or affiliate, or assets of the company."

13. The intent of the STAP was to benefit only involuntarily terminated employees, not employees whose jobs were preserved as a result of efforts undertaken by ARCO. (See finding 12 above)

### The Transaction

14. On December 19, 1986, ARCO sold assets comprising ARCO's building prod-

ucts, Chemlink and Specialty Chemical units to Pony Industries, Inc., as set forth in Asset Purchase Agreement, dated October 28, 1986. On December 19, 1986, Section 35 was in effect and provided an enhanced retirement package for employees who satisfied all of the eligibility requirements of Section 35.

15. The Asset Sale Agreement stated that:

"Without limiting purchaser's right to select qualified employees, purchaser will use reasonable efforts to utilize employees of seller in the operation of the purchased assets after closing. Purchaser will, not later than five days before the closing date, specify to seller the names of employees of the Units whom purchaser and its subsidiaries propose to employ and those whom purchaser and its subsidiaries do not propose to employ after the closing date."

16. The administrative record is void of specific evidence that such a notification was made.

17. Plaintiffs never worked for ARCO after December 19, 1986. Plaintiffs began working for the successor employer (Pony) without missing one day of work. They have never missed a day of employment as a direct result of the Chemlink/Pony transaction.

*The Administration of the Claims*

18. The question of whether Section 35 benefits are applicable to persons who remain employed by a purchaser in connection with the sale of assets has not been considered by ARCO, its employees, or the courts prior to the claims made by these plaintiffs.

19. Neither the ARRP nor the STAP contain an *express* authorization for the administrator to construe ambiguous terms of the plan.

20. Richard J. Anderson, or someone under his supervision, drafted ARRP Section 35, STAP Schedule M, and Paragraph 4.1(b) of the STAP.

21. At least some, if not all, employees were notified in advance of sale closing date that they would not be eligible for Section 35 and STAP benefits if their employment was continued with Pony.

22. Plaintiffs have exhausted their administrative remedies with respect to their claims for enhanced benefits under Section 35 of the ARRP and the STAP, and their claims were denied.

23. At the October 18, 1989 ARRP committee meeting, Richard Anderson was present and participated in briefing the facts and analyzing the plan.

24. Plaintiffs were given the opportunity to make an oral presentation before the ARRP committee in October, 1989, but declined to do so.

25. Several Chemlink executives and employees in the legal and employee relations departments also went to work for Pony but received the enhanced retirement benefits.

26. The ARRP assets are estimated at between 1.2 billion and 2 billion dollars.

27. The estimated value of plaintiffs' claims is less than 2 million dollars, about 175/1,000 of 1% of ARCO's total plan assets.

28. ARCO is the administrator of both the ARRP and STAP.

29. All ARRP committee members except one were ARCO vice presidents and managers.

30. In response to defendants motion for summary judgment in this suit, plaintiffs have submitted facts to the court that had not been raised before the ARRP committee. (See finding 24 to the effect that plaintiffs were given an opportunity to make an oral representation before the ARRP committee.)

31. Because the parties raised new facts during litigation, not previously considered by the ARRP committee, the parties jointly agreed to "remand" the claims to the ARRP committee, and any related STAP claims to the STAP committee.

32. The STAP committee determined plaintiffs were not entitled to STAP benefits.

33. The claims of the plaintiffs added in the December 18, 1989 amending complaint were considered by the administrative committee.

34. The committee relied on the claimants' representation that the additional plaintiffs were identically situated to the original plaintiffs. By letter of February 1, 1990, the committee informed plaintiffs' counsel that the claims of these additional plaintiffs had been denied.

### Conclusions of Law

#### 1.

The plans at issue here are "employee welfare plans" as contemplated by the Employee Retirement Income Security Act of 1974 (ERISA), falling directly under § 502(a)(1)(B) of ERISA [29 U.S.C. § 1132(a)(1)(B)], which provides an exclusive federal cause of action for resolution of disputes involving claims for benefits under such plans. The jurisdiction of this court arises under 28 U.S.C. § 1331.

#### 2.

Prior to the standards announced in *Firestone Tire & Rubber Company v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), most circuits had held that in actions challenging the denial of benefits under an ERISA plan, review is limited to determining whether the administrator's decision was arbitrary and capricious. In *Firestone*, the Supreme Court held that unless the plan issued expressly gives the administrator discretionary authority to construe its terms or determine eligibility, a denial of benefits based on plan interpretation is not to be reviewed under an arbitrary and capricious standard but rather must be reviewed de novo. 489 U.S. at 115, 109 Sup.Ct. at 956.[1]

■ In this case, the only express discretion granted the administrator is whether or not to grant a review of an application for benefits which had previously been de-

nied in whole or in part. Atlantic Richfield Retirement Plan, Section 15.11. We note that defendant raises the implied discretionary authority judicially granted to administrator to interpret the plan or eligibility under the plan, but, that jurisprudentially granted discretion cannot, without making the language of *Bruch* useless, require an arbitrary and capricious standard in every ERISA case. This claim must be reviewed under a de novo standard.[2]

#### 3.

We agree with the Sixth Circuit's statement in *Perry v. Simplicity Engineering*, 900 F.2d 963 (6th Cir.1990):

"In the ERISA context, the role of the reviewing federal court is to determine whether the administrator or fiduciary made a correct decision, applying a de novo standard."

■ "Nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits. Such a procedure would frustrate the goal of prompt resolution of claims by the fiduciary under the ERISA scheme." *Id.*, at 966. In reviewing the ARRP committee's decision, we conclude that we consider only the evidence contained in administrative record. But see *Moon v. American Home Assurance Company*, 888 F.2d 86 (11th Cir.1989) (limitation of consideration to facts before the plan administrator at the time of the denial is "contrary to the concept of de novo review.").

#### 4.

■ Schedule M of the Special Termination Allowance Plan provides for severance benefits as a result of involuntary

---

**1.** For an excellent review of the state of the law in this perplexing area, see Mark Ostrich, ERISA Litigation: What To Do About Standard of Review?, Louisiana Bar Journal, Vol. 38, No. 5, page 327.

**2.** Were the plan to mandate a more deferential standard of review (i.e., arbitrary and capricious), we would reach the same result on the merits of plaintiffs' claims. Indeed, we would even be more inclined to so find.

termination of employment and is a separate and distinct benefit from Section 35 of the Atlantic Richfield Retirement Plan.

5.

Sub-paragraph 4.1(b) of the STAP is not inconsistent with, nor superseded by, any provisions of Schedule M. Schedule M special benefits are not available to those employees who continue in the employment of a company that purchases a subsidiary or affiliate, or assets of ARCO. The employees of the Chemlink Division of Atlantic Richfield did not suffer a termination of employment for purposes of eligibility for Schedule M benefits and are not entitled to those benefits.

6.

Section 35 of the Atlantic Richfield Retirement Plan has not been historically interpreted consistent with the wording of subsection 4.1(b) of the Atlantic Richfield Special Termination Allowance Plan. Irrespective of the lack of interpretive history of Section 35, this Court finds, as a matter of law, that the language "terminated from employment, due to the continuing consolidation of the company" refers to the termination from all employment and not merely that the employee was no longer being compensated by Atlantic Richfield.[3] The plaintiffs in this case have not been "terminated" as contemplated by the ARRP and are not entitled to benefits under Section 35 of the Plan.

7.

█ 29 U.S.C. § 1132(g)(1), the section of ERISA governing the award of attorney's fees and costs in a civil enforcement action does not award attorney's fees to the prevailing party outright; rather, the section allows for attorney's fees for either party in accordance with the district court's discretion. Factors ordinarily considered in determining the propriety of attorney's fees in an ERISA case are: (1) the degree of offending party's culpability or bad faith; (2) ability of such party to satisfy

award of fees; (3) whether award of fees would deter other persons from acting similarly under like circumstances; (4) relative merits of parties' positions; and (5) whether action sought to confer common benefit on group of pension plan participants. *Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir.1983); *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980). Considering all factors as set forth above, particularly in light of the close question of eligibility for benefits in this case, an award of attorney's fees is not appropriate for either party.

*Conclusion*

Persons who immediately went to work for the successor employer, Pony, without missing a day of employment, were not *"terminated from employment"* within the meaning of Section 35.2(a). The plan's language, in our opinion, does not permit an interpretation that employees who continue to work without interruption for the purchaser of their employer's business have been terminated. *Harper v. Macy*, 920 F.2d 544, 545 (8th Cir.1990).

Defendants' Motion for Summary Judgment is GRANTED.

---

**3.** This Court has had extreme difficulty in deciding this case given the close question of plan language interpretation. This task has not been made any easier by the obvious efforts of Atlantic Richfield to ignore the language and meaning of Section 35 to provide for Section 35 benefits to certain select employees in their personnel and legal departments.