United States Court of Appeals,

Fifth Circuit.

No. 91–4255.

KENNETH E. WILDBUR, Sr., et al., Plaintiffs–Appellants,

v.

ARCO CHEMICAL CO., et al., Defendants–Appellees.

Oct. 12, 1992.

Appeal from the United States District Court for the Western District of Louisiana.

Before KING and WIENER, Circuit Judges, and LAKE[*], District Judge.

SIM LAKE, District Judge:

Pintiffs appeal from a summary judgment denying them benefits under their employer's ERISA plans because the district court concluded that plaintiffs were never terminated from employment. Plaintiffs argue that although the district court properly applied a *de novo* standard in reviewing the eligibility determinations of the plans' administrator, the court reached the wrong result because it limited its consideration to facts and arguments in the administrative record. Plaintiffs also argue that the court erred in denying them discovery against the attorneys who advised the plans. Defendants reply that the court reached the right result and correctly limited its review to the administrative record, but argue alternatively that because the court erred in applying a *de novo* standard, its judgment may also be affirmed under the abuse of discretion standard the court should have applied. For the reasons explained below, we VACATE the judgment of the district court and REMAND the case for further consideration.

## I. FACTS

Until December 19, 1986, Atlantic Richfield Company ("ARCO") employed Kenneth Wildbur and the other plaintiffs at one of its subsidiaries, ChemLink Petroleum, Inc. Plaintiffs participated in the Atlantic Richfield Retirement Plan ("ARRP"), which is a defined benefit plan under the Employee

---

[*]District Judge of the Southern District of Texas, sitting by designation.

Retirement Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). Plaintiffs also participated in ARCO's Special Termination Allowance Plan ("STAP"). The STAP is an ERISA employee welfare benefit plan that pays severance benefits to eligible employees. ARCO sponsors and administers both plans.

Between 1984 and 1987 ARCO consolidated and reorganized its operations by selling assets and divisions. In May of 1986 ARCO amended the ARRP to add section 35, which provided for special enhanced retirement benefits. A plan member was eligible for these benefits if the member was notified by ARCO between May 6, 1986, and January 31, 1987, that "he or she will be terminated from employment due to the continuing consolidation of [ARCO], with a termination date on or before December 31, 1989, as determined by [ARCO]." If an ARRP member was eligible for special enhanced retirement benefits under section 35, the member's retirement benefits were enhanced by adding five years to the employee's period of service for calculating benefit vesting, eligibility and accrual; by adding five years to the employee's actual age for benefit calculations; and by increasing the employee's average final base pay for benefit calculations.

When ARCO added section 35 to the ARRP it also amended the STAP. Amendment No. 12 to the STAP added Schedule M "Special Benefit Provisions" to provide special severance benefits to employees who were informed between May 6, 1986, and January 31, 1987, of their termination because of ARCO's consolidation and who "terminate employment" on or before December 31, 1989. Schedule M incorporated all of the "rights and benefits" of the STAP, but provided that if a conflict arose between the STAP and Schedule M, Schedule M would control. Paragraph 4.1(b) of the STAP stated that a "termination of employment will not be deemed to have occurred if the Employee continues in the employment of a Company that purchases a Subsidiary or Affiliate, or assets of [ARCO]."[1] An eligible employee could elect to receive either enhanced retirement benefits under

[1]The ARRP does not contain similar language defining termination from employment. Plaintiffs argue that a conflict exists between criteria for eligibility in ¶ 4.1(b) of the STAP and the criteria in Schedule M and that the Schedule M criteria controls. Defendants argue that ¶ 4.1(b)

section 35 of the ARRP or the special severance benefits provided by Schedule M of the STAP, but not both.

On December 19, 1986, ARCO sold ChemLink and other assets to PONY Industries. The Asset Purchase Agreement stated that PONY will "use reasonable efforts to utilize employees of [ARCO] in the operation of the Purchased Assets after closing. [PONY] will, not later than five days before the Closing Date, specify to [ARCO] the names of employees of the Units whom PONY propose[s] to employ and those whom PONY do[es] not propose to employ after the Closing." The plaintiffs are salaried ChemLink workers whom PONY continued to employ after it purchased ChemLink from ARCO.

After the plaintiffs became PONY employees they requested enhanced retirement benefits under section 35 of the ARRP and special severance benefits under Schedule M of the STAP. Both requests were denied by the plans' administrator, the ARRP committee, which concluded that the plaintiffs had not been terminated from employment.[2]

Plaintiffs brought this suit in Louisiana state court in September of 1988 against ARCO, ChemLink, ARRP and the ARRP Trustees to recover benefits under the plans. Defendants removed the case because the plaintiffs' claims were governed by ERISA, and plaintiffs agree that this action is brought under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).

Commencement of this litigation did not abate plaintiffs' efforts to obtain relief via the administrative review procedures provided by the plans. Over the next two years the parties litigated

---

applies because it does not conflict with Schedule M, and because, even if there is a conflict, plaintiffs are also ineligible under Schedule M.

[2]At some stages of the administrative process a separate STAP committee considered and denied plaintiffs' STAP claims. For simplicity we will refer to both plans' administrators as the ARRP committee.

in both forums, and both sides sought to use events in one forum to enhance their position in the other. One result of this dual track litigation was that the district court was in the unenviable position of continually being asked to review an administrative record that was in a state of flux. After ARCO filed its first motion for summary judgment in March of 1989, plaintiffs raised facts in opposition that they had not presented to the ARRP committee. The parties agreed temporarily to stay the litigation so that plaintiffs could obtain and present new evidence to the ARRP and STAP committees, and the district court granted several stays to allow the committees to reconsider the plaintiffs' claims in light of this evidence.

During the second phase of administrative review plaintiffs presented evidence intended to show that when ARCO sold other divisions it had considered employees who continued working in the sold divisions as terminated from employment and eligible for benefits under section 35 of the ARRP. Plaintiffs cited ARCO's sale of its Philadelphia refinery to Transworld Oil, Ltd. and its sale of oil and gas assets to Hondo Oil Co. as examples of ARCO's payment of enhanced retirement benefits under section 35 to former ARCO employees who continued working for those operations after ARCO sold them. Plaintiffs also identified ARCO employees who continued working for ChemLink as PONY employees, but were nevertheless considered terminated and eligible to receive section 35 benefits. Plaintiffs argued that this evidence showed that ARCO did not uniformly interpret section 35, but instead administered the plan to promote its own business purposes. After reviewing the newly presented evidence, the plaintiffs' ARRP and STAP claims were again denied on November 3, 1989.[3]

After the second phase of administrative review, the parties again agreed to resort to the administrative process to allow the review committee to consider claims of newly joined plaintiffs. In February of 1990 the new plaintiffs' claims for benefits under section 35 of the ARRP and Schedule M of the STAP were denied.

_____

[3]Defendants' Exhibits J–21 and J–22.

After the three phases of administrative review were completed, plaintiffs' counsel sought to depose all of the ARRP committee members and ARCO's lawyers. ARCO moved to quash the depositions on grounds of relevance, the attorney work product doctrine, and the attorney-client privilege. The magistrate judge concluded that the discovery could yield evidence of ARCO's uniformity of construction of the plans, the fairness and reasonableness of the administrator's reading of the plans and the anticipated costs of a verdict favorable to the plans, all of which would be relevant under the arbitrary and capricious standard that the magistrate judge concluded would guide the court's review of the merits.[4] The magistrate judge allowed plaintiffs to depose the committee members about all phases of the administrative review process and to depose Richard Anderson, an ARCO attorney, about the administration of the plans before September of 1988, when the lawsuit was filed, but quashed the deposition of ARCO's trial counsel, Howard Shapiro. The district court affirmed the magistrate judge's rulings.[5]

In December of 1990 the parties again filed cross-motions for summary judgment. On February 27, 1991, the district court entered a Memorandum Ruling granting defendants' motion for summary judgment, 765 F.Supp. 891,[6] and the following month the court entered a final judgment for defendants after denying Plaintiffs' Motion to Set Aside Ruling and Remand and Plaintiffs' Motion to Reconsider.

The district court concluded that its review of the plan administrator's benefit determinations should be conducted under a *de novo* standard, but observed alternatively that it would have reached

[4]R.Vol. 6, p. 676.

[5]Neither the district court's initial letter of affirmance (R.Vol. 7, p. 815) nor its later orders (R.Vol. 7, pp. 855, 856) addressed the standard to be used in reviewing the administrators' decisions, although in its second order the district court adopted the magistrate judge's finding (based on her conclusion that an arbitrary and capricious standard applied) that plaintiffs were entitled to discovery on "the uniformity of construction of the ARRP/STAP, the fairness and reasonableness of the reading of the ARRP/STAP, and the anticipated costs of a favorable verdict to the ARRP/STAP."

[6]R.Vol. 10, p. 1313.

the same result under a more deferential, arbitrary and capricious standard of review.[7] With respect to plaintiffs' claim for special severance benefits under Schedule M, the court concluded that ¶ 4.1(b) of STAP was not inconsistent with nor superseded by Schedule M, and that under ¶ 4.1(b) employees such as plaintiffs who continued in the employment of a company that purchased a subsidiary of ARCO were not entitled to Schedule M benefits. The court also concluded, as a matter of law, that the section 35 language "terminated from employment, due to continuing consolidation of the company" meant termination from all employment, not merely from ARCO employment. The court held that a change of employers with a continuation of employment was not a termination from employment and therefore that plaintiffs were not entitled to special severance benefits under Schedule M of the STAP or enhanced retirement benefits under section 35 of the ARRP.

The central issue presented by this appeal involves the district court's conclusion, based on its reading of *Perry v. Simplicity Engineering Div. of Lukens General Industries, Inc.,* 900 F.2d 963, 966 (6th Cir.1990), that it should not consider evidence not presented to the plans' administrator. Although the district court acknowledged that the Eleventh Circuit reached the opposite conclusion in *Moon v. American Home Assurance Co.,* 888 F.2d 86, 89 (11th Cir.1989), the court held that "[i]n reviewing the ARRP committee's decision, we conclude that we consider only the evidence contained in the administrative record."[8]

---

[7]Both the magistrate judge and the district court referred to an "arbitrary and capricious" standard of review in describing the more deferential standard that may apply instead of a *de novo* standard if the plan satisfies the criteria articulated in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Although our pre-*Firestone* decisions generally employed an "arbitrary and capricious" vernacular, *e.g., Denton v. First National Bank of Waco,* 765 F.2d 1295, 1304 (5th Cir.1985), after *Firestone* we have usually described this more deferential alternative to *de novo* review as review under an "abuse of discretion" standard. *See Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53, 56 n. 1 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990). Nevertheless, both this court and district courts in this circuit have continued to use both terms to describe the same deferential standard of review. *E.g., Penn v. Howe–Baker Engineers, Inc.,* 898 F.2d 1096, 1100 (5th Cir.1990). Although we employ in this opinion what we describe as the abuse of discretion standard, we detect only a semantic, not a substantive, difference in this label and the "arbitrary and capricious" label used in this case by the magistrate judge and district court.

[8]Memorandum Ruling, 765 F.Supp. at 895.

To determine whether the district court erred in not considering evidence beyond the administrative record we must identify the appropriate standard of review, determine whether the excluded evidence was relevant under that standard, and, if so, decide whether the district court's failure to consider this evidence requires that its judgment be reversed.

## II. THE STANDARD OF REVIEW

Because the district court concluded that the only express discretionary authority conferred on the plans' administrator was the authority to grant a review of an application for benefits that had previously been denied, the court held that the administrator's determinations must be reviewed *de novo,* rather than under the abuse of discretion standard.[9] ARCO argues that the district court should have applied an abuse of discretion standard because the plan language gives to the administrator discretionary authority to determine eligibility for benefits.

Section 15.11 of the ARRP contains a detailed procedure for claiming benefits. If a claim is initially denied, a claimant may seek review of the denial by the plan administrator. Section 15.11 states that if a claimant seeks such review, as plaintiffs did in this case,

> [t]he Administrator shall make a full and fair review of each application and any written materials submitted by the applicant or the company in connection therewith and may require the company or applicant to submit within thirty days of written notice by the administrator therefor, such additional facts, documents, or other evidence as the Administrator, in its sole discretion, deems necessary or advisable in making such a review. On the basis of its review, the Administrator shall make an independent determination of the applicant's eligibility for benefits under the Plan. The decision of the Administrator on any application shall be final and conclusive upon all persons if supported by substantial evidence in the record.[10]

A denial of benefits challenged under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), is reviewed under a *de novo* standard unless the plan gives the administrator "discretionary authority

---

[9]Memorandum Ruling, 765 F.Supp. at 895.

[10]Because § 6.6 of the STAP contains language that is the same as § 15.11 of the ARRP in all material respects, for the sake of brevity our discussion will only refer to § 15.11 of the ARRP. Our analysis applies to both plans.

to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). If the administrator has discretionary authority, a reviewing court applies an abuse of discretion standard. *Id.* Discretionary authority cannot be implied; an administrator has no discretion to determine eligibility or interpret the plan unless the plan language expressly confers such authority on the administrator. *Cathey v. Dow Chemical Co. Medical Care Program,* 907 F.2d 554, 558 (5th Cir.1990), *cert. denied,* ⸺ U.S. ⸺, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991).

In their briefing on this issue the parties quote from plan language cited by this and other courts in an ever-expanding number of decisions and argue that the language of § 15.11 is either similar enough to, or too dissimilar from, those plans to achieve the result advocated in this case. As our prior decisions reflect, however, we have not imposed a linguistic template; we read a plan as a whole to determine if, in our judgment, it satisfies the *Firestone* criteria. Although our prior decisions are illustrative of our analysis of particular plan language, they do not diminish our obligation to critically evaluate the language of § 15.11 under the lens of *Firestone.*

We conclude that although § 15.11 does not expressly give the administrator authority to construe plan terms, it does expressly give the administrator discretionary authority to determine eligibility for benefits. Section 15.11 says that after reviewing the evidence it[11] believes necessary, the administrator "shall make an independent determination of the applicant's eligibility for benefits under the Plan" and that decision "shall be final and conclusive upon all persons if supported by substantial evidence in the record." This language satisfies one of the alternative *Firestone* criteria for review under an abuse of discretion standard because it expresses, i.e., puts into words, the authority of the administrator to determine eligibility. That authority is "independent," i.e., it cannot

---

[11]The administrator is a committee.

be made by anyone else, and it is "final and conclusive," if supported by substantial evidence.[12]

We reject plaintiffs' argument that a *de novo* standard must apply because of the absence of the word "discretion" in the sentence of § 15.11 that states that the administrator has the power to make an "independent determination of an applicant's eligibility for benefits...." We agree with the District of Columbia Circuit that "[t]he Court in *Firestone* surely did not suggest that "discretionary authority' hinges on incantation of the word "discretion' or any other "magic word.' Rather, the Supreme Court directed lower courts to focus on the breadth of the administrators' power—their "authority to determine eligibility for benefits or to construe the terms of the plan' ..." *Block v. Pitney Bowes Inc.,* 952 F.2d 1450, 1453 (D.C.Cir.1992). *Accord, De Nobel v. Vitro Corp.,* 885 F.2d 1180, 1187 (4th Cir.1989) ("There are obviously no magic words required to trigger the application of one or another standard of judicial review ..."). Although the expression of the ARCO plan administrator's discretionary authority to determine eligibility may not be as obvious as in some of the cases where we have found similar discretion, we are satisfied that, taken as a whole, § 15.11 expresses the discretion of the plan administrator to determine eligibility. Our analysis of § 15.11 necessarily leads us to conclude that the district court erred in applying a *de novo* standard of review.

III. WHAT EVIDENCE IS RELEVANT TO REVIEW UNDER AN ABUSE OF DISCRETION STANDARD?

Application of the abuse of discretion standard may involve a two-step process. First, a court must determine the legally correct interpretation of the plan. If the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion. *E.g., Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53, 56 (5th Cir.),

---

[12]In one of our early ERISA decisions, *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 314 (5th Cir.1982), we cited with approval a definition of an "arbitrary and capricious" standard as one that required a reviewing court to determine if the decision of the plan fiduciary is "supported by substantial evidence" and is based on correct interpretations of law. Although we have no desire to wade into the largely semantic disagreement among other circuits about how to label this deferential standard of review, we are nonetheless confident that if a decision is supported by substantial evidence and is not erroneous as a matter of law, it is not arbitrary and capricious. *See Sandoval v. Aetna Life & Casualty Ins. Co.,* 967 F.2d 377 and n. 4 (10th Cir.1992).

*cert. denied,* —— U.S. ——, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990).[13]  In answering the first question, i.e., whether the administrator's interpretation of the plan was legally correct, a court must consider:

(1) whether the administrator has given the plan a uniform construction,

(2) whether the interpretation is consistent with a fair reading of the plan, and

(3) any unanticipated costs resulting from different interpretations of the plan.

*Jordan,* 900 F.2d at 56.

If a court concludes that the administrator's interpretation is incorrect, the court must then determine whether the administrator abused his discretion.  Three factors are important in this analysis:

(1) the internal consistency of the plan under the administrator's interpretation,

(2) any relevant regulations formulated by the appropriate administrative agencies, and

(3) the factual background of the determination and any inferences of lack of good faith.

*Batchelor v. International Brotherhood of Electrical Workers Local 861 Pension & Retirement Fund,* 877 F.2d 441, 445–48 (5th Cir.1989).  Although the fact that an administrator's interpretation is not the correct one does not in itself establish that the administrator abused his discretion, "[w]hen [his] interpretation of a plan is in direct conflict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior."  *Id.* at 445, quoting *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 314 (5th Cir.1982).

Our well-established criteria for evaluating a benefit determination under an abuse of discretion standard makes it obvious that some evidence other than that contained in the

---

[13]The genesis of this two-step, multiple-part analysis appears to be *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 314 (5th Cir.1982).

administrative record may be relevant at both steps of this process of judicial review. Determining whether the administrator has given a uniform construction to a plan may require a court to evaluate evidence of benefit determinations other than the one under scrutiny. Likewise, to determine whether an interpretation results in unanticipated costs a court may be required to review what costs were anticipated and what costs may flow from the challenged interpretation. We can readily envision scenarios where much of this information would not be in the administrative record.

If a reviewing court concludes that the administrator's interpretation of the plan was incorrect and proceeds to the second step of our abuse of discretion analysis, three additional factors become relevant. One of these (which really involves two separate questions), the factual background of the determination and any inferences of a lack of good faith, may, at least on the question of good faith, require the court to review evidence that was not presented to the administrator.[14] This is especially true because we have instructed district courts to evaluate inferences of lack of good faith on a sliding scale.

> We note that "the arbitrary and capricious standard may be a range, not a point. There may be in effect a sliding scale of judicial review of trustees' decisions ...—more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is ...'.

*Lowry v. Bankers Life & Casualty Retirement Plan,* 871 F.2d 522, 525 n. 6 (5th Cir.), *cert. denied,* 493 U.S. 852, 110 S.Ct. 152, 107 L.Ed.2d 111 (1989). Consistent with this analysis, the Eleventh Circuit has observed that "a wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries." *Brown v. Blue Cross & Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1566–67 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 712, 112 L.Ed.2d 701

---

[14]Although the other elements—internal consistency and applicable regulations—would generally appear to be less susceptible to extra-record evidence, we express no opinion whether evidence apart from the administrative record could also be relevant to these elements.

(1991).

Perhaps because the focus of our prior decisions was to define and apply the appropriate standard of review, we do not appear to have explicitly stated that evidence beyond the administrative record may be considered by a reviewing court. Although our abuse of discretion analysis and the manner in which we have applied it submits to no other reasonable interpretation,[15] we now make manifest that a district court is not confined to the administrative record in determining whether, under our analytical framework, a plan administrator abused his discretion in making a benefit determination. This is not to say that a litigant dissatisfied with an administrator's benefit determination is free to disregard the evidence before the administrator and relitigate in court the historical facts surrounding a claim. We have long held that in conducting review under an abuse of discretion standard, a district court should evaluate the administrator's fact findings regarding the eligibility of a claimant based on the evidence before the administrator, assuming that both parties were given an opportunity to present facts to the administrator. *See Denton v. First National Bank of Waco,* 765 F.2d 1295, 1304 (5th Cir.1985); *Lowry v. Bankers Life & Casualty Retirement Plan,* 865 F.2d 692, 694 (5th Cir.), *reh'g denied,* 871 F.2d 522, *cert. denied,* 493 U.S. 852, 110 S.Ct. 152, 107 L.Ed.2d 111 (1989). Yet, in these and other opinions, we have also explained how other evidence, not dealing with the historical facts underlying the benefit determination, and therefore

---

[15]In *Batchelor* we evaluated the testimony of a pension fund actuary and evidence of the pension plan's total assets before concluding that the plan would not face substantial unanticipated costs if the plaintiff were to prevail, 877 F.2d at 445. In *Jordan* we lamented the failure of either party to present the district court evidence of the administrator's actions in handling claims similar to the plaintiff's and evidence concerning unanticipated costs. 900 F.2d at 56. In *Penn v. Howe–Baker Engineers, Inc.,* 898 F.2d 1096, 1101 (5th Cir.1990), we affirmed the judgment of the district court after a bench trial because we concluded that the trial testimony and exhibits of the plaintiff and two of the defendant's employees provided an adequate basis for the district court to conclude that the plan administrator's denial of pension benefits was not arbitrary or capricious. In *Kennedy v. Electricians Pension Plan, IBEW # 995,* 954 F.2d 1116, 1123–24 (5th Cir.1992), both the district court and this court evaluated evidence offered at trial by the plan administrator of the substantial costs that would result from a decision favorable to the plaintiff. We also noted "the scant evidence" presented by both parties before the district court on the factual background and good faith of the plan fiduciary. 954 F.2d at 1124–25. In one of our few decisions reviewing a district court's *de novo* review of a benefit determination, *Schultz v. Metropolitan Life Ins. Co.,* 872 F.2d 676, 679–80 (5th Cir.1989), we implicitly approved the district court's use of affidavit evidence offered to show inconsistent treatment of other similar claims by the plan administrator.

usually not in the administrative record, was relevant under our abuse of discretion analysis.

Defendants argue that allowing a district court to consider evidence not in the administrative record would undermine the utility and integrity of the administrative process. Without focusing on particular types of evidence or the reasons they could be relevant to judicial review, the district court adopted this argument, reasoning that if district courts were to consider evidence not presented to the administrator, they would become "substitute plan administrators" and in so doing, would frustrate ERISA's goal of prompt resolution of claims by plan fiduciaries.[16]

The district court found support for its ruling in the Sixth Circuit's decision in *Perry v. Simplicity Engineering Div. of Lukens General Industries, Inc.,* 900 F.2d 963 (6th Cir.1990). In *Perry* the district court granted summary judgment for the plan administrator after concluding that under an arbitrary and capricious standard the administrative record supported the decision to deny Perry benefits because he was not totally disabled while covered by his employer's disability plan. The court refused to reconsider its decision in light of evidence from a vocational expert that Perry had become disabled while he was covered by his employer's plan. The Sixth Circuit held that the district court should have used a *de novo* standard of review but affirmed the summary judgment after concluding that no other result was possible even if a *de novo* standard had been used. *Id.* at 967.

To reach this result the Sixth Circuit had to decide what weight to give to the evidence offered by plaintiff that was not in the administrative record. The court acknowledged that *de novo* review could reasonably mean either review based only on the administrative record, or review based on the record and any additional evidence received by the reviewing court. *Id.* at 966. After observing that the Supreme Court in *Firestone* had not stated which type of *de novo* review it had in mind, the Sixth Circuit held the first type to be more appropriate for two reasons. First, its prior precedent limited courts to review of the administrative record alone when using an arbitrary and

---

[16]Memorandum Ruling, 765 F.Supp. at 895–896.

capricious standard. Second, it concluded that permitting courts to consider evidence not in the administrative record would impair ERISA's goal of achieving prompt and inexpensive benefit determinations by plan administrators. *Id.* at 966–67.

In *Sandoval v. Aetna Life & Casualty Ins. Co.,* 967 F.2d 377 (10th Cir.1992), the *Perry* rationale was found persuasive in the context of a review of a benefit determination under an arbitrary and capricious standard. Sandoval's long-term disability benefits under his employer's plan were terminated after the plan administrator determined that he was no longer totally disabled, and the plan review committee upheld this decision. Although Sandoval was represented by counsel before the administrative review committee, neither he nor his counsel informed the committee that he continued to be disabled not only because of his prior physical impairments, but also because he was suffering from psychological impairment. Before the district court, however, Sandoval presented evidence of psychological impairment, and the court found that he was in fact psychologically disabled. The court nevertheless affirmed the decision to terminate Sandoval's benefits because he had never offered evidence or argued psychological impairment during the administrative review process, and based on the record before it, the administrator's decision to terminate Sandoval's disability benefits was not arbitrary and capricious.

The Tenth Circuit affirmed. Citing *Perry,* the court concluded that "[i]n determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision." 967 F.2d at 380. Like the Sixth Circuit, the Tenth Circuit concluded that a contrary rule would result in increased expense and delay of benefit determinations by plan administrators.[17]

---

[17]In *Oldenburger v. Central States Pension Fund,* 934 F.2d 171, 174 (8th Cir.1991), the Eighth Circuit stated that judicial review under an arbitrary and capricious standard was limited to the evidence before the plan administrator. Like *Perry* and *Sandoval,* the case turned on an issue of historical fact—whether the plan member was an employee at his normal retirement date. Because the Eighth Circuit's opinion does not indicate that plaintiff sought to introduce evidence before the district court that was not considered by the plan administrator, its statement regarding what evidence the court could consider appears to be *dicta.*

*Perry* and *Sandoval* do not reflect a consensus among the circuits on this issue; the Eleventh and Third Circuits have held that a district court may consider evidence that was not before the plan administrator. In *Moon v. American Home Assurance Co.,* 888 F.2d 86 (11th Cir.1989), the district court granted summary judgment to the plaintiffs for accidental death benefits under a group travel accident insurance policy issued by the defendant. Without deciding whether the district court should have applied ERISA instead of state insurance law, the Eleventh Circuit concluded that the judgment could be affirmed under an ERISA *de novo* standard because that standard was essentially the same as the state law standard of review used by the district court. Of i mportance to this case was the Eleventh Circuit's conclusion that limiting a trial court conducting *de novo* review to the facts available to the administrator at the time of the decision was "contrary to the concept of a *de novo* review." *Id.* at 89.[18]

The Third Circuit reached the same conclusion in *Luby v. Teamsters Health, Welfare & Pension Trust Funds,* 944 F.2d 1176, 1184–85 (3d Cir.1991). The district court, in order to determine whether a deceased plan member had signed beneficiary cards, examined evidence of his signature on other documents that were not before the plan administrator. In affirming the district court the Third Circuit held that although limiting the district court to review of the evidence considered by the plan administrator was appropriate where a deferential standard of review applied, such a limitation made no sense when the administrator's decision was reviewed *de novo,* especially where, as in the case before it, there was no administrative record to review on the crucial issue of who executed the benefit cards. *Id.* at 1184–85.

We find both illuminating and prescient the Second Circuit's discussion of the apparent conflict between these two lines of cases.

We believe that it is unnecessary to resolve the conflict between *Moon* and *Perry* to

---

[18]The court's opinion does not say what additional evidence the district court considered.

determine whether the district court properly admitted the expert testimony at issue in this case, although we note that in earlier decisions we appear to have accepted without discussion a district court's consideration on de novo review of evidence not presented to the plan administrator. See, e.g., *Heidgerd v. Olin Corp.,* 906 F.2d 903 (2d Cir.1990). Even if we accepted the Sixth Circuit's view that a court's de novo review of the denial of ERISA benefits should be limited to the information presented to the administrator who denied the claim—an issue we do not decide—we believe that evidence regarding the proper interpretation of the terms of the plan, like the expert testimony here, would be treated differently from evidence intended to establish a particular historical fact regarding the claimant, like the evidence of the date of total disability at issue in *Perry.* Consideration of evidence relevant to plan interpretation on de novo review does not implicate the Sixth Circuit's concern that courts would become "substitute plan administrators," particularly since de novo review under the *Firestone* standard presupposes that the administrator's role does not include discretion to interpret the terms of the plan. Indeed, at least one circuit has suggested, without deciding, that it may be appropriate under *Firestone* to apply different standards of review to claim denials based on factual determinations and claim denials based on interpretation of the terms of the plan.

*Masella v. Blue Cross & Blue Shield of Connecticut, Inc.,* 936 F.2d 98, 104 (2d Cir.1991). We recently held that it is appropriate under *Firestone* to apply different standards of review to claim denials based on factual determinations and denials based on interpretations of plan language. In *Pierre v. Connecticut General Life Ins. Co.,* 932 F.2d 1552 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991), the district court reviewed a plan administrator's denial of accidental death benefits to a widow under her husband's ERISA plan. Applying a *de novo* standard of review, the court held that hearsay evidence considered by the administrator was untrustworthy and in the absence of that evidence there was an insufficient evidentiary basis to support the administrator's denial of benefits.

On appeal in *Pierre* we began our analysis by observing that benefit determinations made by a plan administrator may be divided into two general categories.

"First, he must determine the facts underlying the claim for benefits. Second, he must then determine whether those facts constitute a claim to be honored under the *terms* of the plan. [*Firestone* ] addressed the proper standard of review that is to be given to the plan administrator's second determination. [It] did not speak to the first."

*Pierre,* 932 F.2d at 1557 (citations omitted). We then held that it was entirely consistent with the principles of trust law that undergirded the Supreme Court's analysis in *Firestone* to apply different standards of review to these categories of decisions. After a thorough analysis of both ERISA and

trust laws, we concluded that a reviewing court should evaluate fact determinations "that reflect a reasonable and impartial judgment" of a plan administrator under an abuse of discretion standard whether or not the plan gave the administrator express discretion under the *Firestone* analysis to determine eligibility or construe plan terms. 932 F.2d at 1562. Applying this standard to the facts in *Pierre* we held that there was sufficient evidence apart from the untrustworthy hearsay to support the administrator's decision, especially since the plaintiffs had been requested by the administrator to submit any evidence that Pierre's death was accidental, but had declined to do so.

The ARCO defendants argue that *Pierre* supports the decision of the district court to limit review to the evidence before the ARRP and STAP administrator. The problem with this argument is that the basis for the district court's decision was not its approval of the administrator's fact findings, but its conclusion that the administrator correctly interpreted the eligibility criteria of the ARRP and the STAP. *Firestone* still dictates the standard for reviewing this type of determination by a plan administrator. Therefore, in this case the abuse of discretion standard applies, not because the eligibility determinations turned on the administrator's findings of historical facts about plaintiffs' claims, but because we have concluded that the administrator had discretion under § 15.11 to make eligibility determinations.

Although it can be argued that our decisions in *Denton, Lowry,* and *Pierre* would support a decision by a district court conducting an abuse of discretion review to limit its review of the historical facts underlying a claim to those presented to the plan administrator,[19] that is not what the

---

[19]*See Davidson v. Prudential Ins. Co. of America,* 953 F.2d 1093, 1095 (8th Cir.1992) (district court reviewing denial of disability benefits under *de novo* standard did not abuse its discretion in refusing to consider additional evidence of disability where employee failed to present it to plan administrator). We do not, however, read *Pierre* or our other decisions as limiting judicial review of *all* fact determinations made by a plan administrator to the administrative record. For example, in this case the ARCO plan administrator found that it had consistently interpreted the eligibility requirement in § 35.2. We have consistently stated that courts may consider evidence outside the administrative record of other benefit determinations in deciding whether the administrator has uniformly interpreted plan language, and we see no reason the role of a court in undertaking this analysis should be truncated merely because a plan administrator may have considered some of the same evidence.

district court did in this case.  Instead, the court concluded, as a matter of law, that the administrator's interpretations of the plans' eligibility criteria were correct.  In other words, using the nomenclature of our two-step abuse-of-discretion analysis, the district court held that the administrator's interpretations of the plans' eligibility criteria was consistent with a fair reading of the plans.  This distinction makes *Perry* and *Sandoval* inapposite since they both involved district court review of a plan administrator's determination of questions of historical fact.  Like the Second Circuit in *Masella,* we believe that evidence beyond the administrative record showing inconsistent plan interpretation by the administrator, as well as evidence relevant to the other elements of our abuse of discretion analysis, does not "implicate the Sixth Circuit's concern [and the concern of the district court in this case] that courts would become "substitute plan administrators....'"  936 F.2d at 104.  We therefore conclude that evidence that is relevant in determining whether under our two-step framework, an administrator's interpretation of a plan was legally correct, and if not, whether the administrator abused his discretion, may be considered by a district court even if this evidence was not part of the administrative record.

IV. DID THE DISTRICT COURT ERR IN FAILING TO CONSIDER RELEVANT EVIDENCE?

In their briefs plaintiffs present a number of factual and legal arguments why the district court's refusal to consider what plaintiffs characterize as their "best evidence and arguments"[20] led the district court to err in holding that plaintiffs were not entitled to the benefits they sought.  Ideally, to determine whether the district court erred we would identify the evidence that the court did not consider and then determine whether it was relevant under our abuse-of-discretion analysis.  If so, we would then decide whether the district court's failure to consider this evidence was reversible error.

In this case the record we have been presented prevents us from engaging in this type of

---

[20]Plaintiffs' Brief at 12.

analysis. For example, plaintiffs argue that the district court erred in failing to consider other ARCO interpretations of the word "terminated" as used in § 35.2 of the ARRP. The evidence cited by plaintiffs includes evidence from the second phase of the administrative process dealing with interpretations given by the plan administrator to § 35.2 and similarly worded provisions of the ARRP, and other evidence not presented at the second hearing. We cannot tell from the record, however, whether the district court considered either of these types of evidence. The court was obviously aware of some of this evidence, but whether that knowledge affected the court's decision is not clear. At certain places in the court's Memorandum Ruling it appears that the court may have been influenced by some of this evidence. For example, in footnote 3 to conclusion of law 6 the court stated that it "has had extreme difficulty in deciding this case given the close question of plan language interpretation. This task has not been made any easier by the obvious efforts of Atlantic Richfield to ignore the language and meaning of Section 35 to provide for Section 35 benefits to certain select employees in their personnel and legal departments."[21]

Yet, counterbalanced against this type of equivocal reference to evidence or arguments that the court did not identify, is the court's explicit statement in conclusion of law 3 that "[i]n reviewing the ARRP committee's decision, we conclude that we consider only the evidence contained in the administrative record."[22] In a similar vein, in conclusion of law 6 the court stated:

> Section 35 of the Atlantic Richfield Retirement Plan has not been historically interpreted consistent with the wording of subsection 4.1(b) of the Atlantic Richfield Special Termination Allowance Plan. *Irrespective of the lack of interpretive history of Section 35,* this Court finds, as a matter of law, that the language "terminated from employment, due to the continuing consolidation of the company' refers to the termination from all employment and not merely that the employee was no longer being compensated by Atlantic Richfield. (emphasis ours)[23]

We cannot tell from these statements whether the district court was aware of evidence of contrary

---

[21]Memorandum Ruling, 765 F.Supp. at 896.

[22]Memorandum Ruling, 765 F.Supp. at 895.

[23]Memorandum Ruling, 765 F.Supp. at 896.

interpretations of § 35.2 but consciously chose not to let this evidence affect its decisionmaking process, or whether the court evaluated it but concluded that it did not overcome the court's conclusion as to the meaning of the plans' eligibility criteria.[24]

We are also in doubt as to what the district court meant by its statement that it considered "only evidence contained in the administrative record."[25] Plaintiffs argue that the court declined not only to consider facts and arguments raised in the cross-motions for summary judgment that were never presented to the plan administrator, but that the court also declined to consider "remanded facts," that is, facts and arguments first presented to the plan administrator on remand. Plaintiffs attempt to buttress this argument by referring us to a copy of their Post Hearing Memorandum responding to questions raised by the court during oral argument. The Post Hearing Memorandum, which together with an accompanying letter to the district judge[26] were docketed with the court's Memorandum Ruling, contains numerous underscorings and marginal comments indicating that someone carefully read and evaluated it. Among these comments is the note that the reader would "not consider" certain evidence urged by plaintiffs' counsel.[27] Directly opposite this notation is plaintiffs' argument that the court should consider the affidavit of Kenneth Terrell, a former regional manager for ChemLink, as evidence that ARCO had previously told ChemLink employees that they would receive enhanced retirement benefits provided by § 35, and that other ChemLink employees did receive enhanced benefits even though they continued working for ChemLink after PONY bought it. This affidavit (Exhibit B to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment)

---

[24]In their briefs the parties expend considerable effort in arguing, from the plaintiffs' standpoint, that the district court failed to consider other relevant evidence, and from the defendants' standpoint, that the court may have considered that evidence, but did not mention it, or, alternatively, that the evidence was not relevant anyway. Because we vacate the judgment and remand for further consideration by the district court, we do not attempt to respond to those arguments, even assuming that it would be possible to do so on this record.

[25]Memorandum Ruling, 765 F.Supp. at 895.

[26]R.Vol. 10, pp. 1324, 1325.

[27]R.Vol. 10, p. 1333.

was executed on April 14, 1989, and was submitted to the ARRP committee as part of the second remand. The "not consider" notation is even more puzzling because the court referred to unspecified evidence of this type in footnote 3 of its Memorandum Ruling.

Although we recognize that under Fed.R.Civ.P. 52(a) "[f]indings of fact and conclusions of law are unnecessary on decisions on motions under Rule 12 or 56 ...," we are also mindful of our requirement that a district court explain its reasons for granting a motion for summary judgment in sufficient detail for us to determine whether the court correctly applied the appropriate legal test. *E.g., Myers v. Gulf Oil Corp.,* 731 F.2d 281, 283–84 (5th Cir.1984). Our decision should not be understood as broadening in any way our prior precedent regarding the sufficiency required of a district court's explanation of its reasons for granting a motion for summary judgment. We do not accept plaintiffs' argument that the district court's failure to expressly list or refer to each factual and legal argument raised by plaintiffs means that the court did not consider these facts and arguments. Nor are we intimating that all six of the elements that may affect a district court's abuse-of-discretion analysis are present in every case, or that if all of them are potentially relevant in a particular case, that a district court must refer to them in deciding a case. We are mindful that in many cases the parties may not raise all of these elements, and that elements that are raised may not be supported by sufficient summary judgment evidence to create a genuine issue of material fact.

But in the context of this case, where we are to draw all legitimate factual inferences in favor of the nonmovant, where the district court acknowledged that in deciding a "close question of plan language interpretation" it would not consider evidence not presented to the plan administrator, where we have extreme difficulty determining what evidence and arguments the court did consider, and where the evidence that the court arguably did not consider may be relevant under the proper analytical framework for evaluating the administrator's denial of benefits, we conclude that it is necessary to vacate the judgment and remand for a fuller analysis of the evidence under the

appropriate standard of review.[28] We intimate no opinion as to the correctness of the ultimate decision of the district court affirming the administrator's decisions. The district court may well have reached the right decision. On the record before us, however, we are unable to perform our coordinate role of reviewing the decision of the district court because we cannot tell whether the court properly evaluated all of the potentially relevant evidence.

## V. PLAINTIFFS' RIGHT TO DEPOSE THE PLANS' ATTORNEYS

After the ARRP committee completed the last phase of its review of plaintiffs' claims, the plaintiffs sought to depose all of the ARRP and STAP committee members and ARCO's in-house and trial counsel. ARCO moved to quash the depositions on grounds of relevance, the attorney work product doctrine, and the attorney-client privilege. The magistrate judge allowed plaintiffs to depose the ARRP and STAP committee members about all phases of the administrative process and allowed plaintiffs to depose Richard Anderson, ARCO's in-house counsel, about events before plaintiffs filed this action. The magistrate judge quashed the deposition of ARCO's trial counsel, Howard Shapiro, after concluding that his communications with the plan administrator were protected by the attorney-client privilege.

Plaintiffs argue that they should have been allowed to depose both counsel on all advice they gave the plans, including advice given during the two remands after this suit was filed, because the attorney-client privilege cannot be asserted by an ERISA plan fiduciary against plan beneficiaries such as plaintiffs. An ERISA plan is a separate legal entity from its sponsor, 29 U.S.C. § 1132(d), and a plan's administrator owes a fiduciary duty to the plan's beneficiaries, not its sponsor. *See* 29 U.S.C. §§ 1002(21), 1103(a) and (c)(1), and 1104(a)(1). When an attorney advises a plan administrator or

---

[28]We are mindful of the district court's statement that it would reach the same result under an arbitrary and capricious review, but as we have attempted to explain above, the court's Memorandum Ruling does not apply the analytical framework necessary for us to evaluate the court's decision under that type of review, i.e., abuse of discretion review. When faced with a similar problem in *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 314 (5th Cir.1982), we employed the same approach we reluctantly apply here.

other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator. *Washington–Baltimore Newspaper Guild, Local 35 v. Washington Star Co.,* 543 F.Supp. 906, 909 (D.D.C.1982). Therefore, an ERISA fiduciary cannot assert the attorney-client privilege against a plan beneficiary about legal advice dealing with plan administration. *Id.*

The magistrate judge found that there had never been a mutuality of interest that would create a fiduciary relationship between ARCO's trial counsel, Shapiro, and the plan beneficiaries because all of Shapiro's communications with the plan administrator were made for the purpose of defending the pending lawsuit and did not deal with plan administration. This finding is supported by Defendants' Response to Plaintiffs' Supplemental Discovery Memorandum,[29] and plaintiffs do not dispute it in their briefs before this court. We therefore AFFIRM the magistrate judge's ruling that Shapiro was not subject to discovery about his communications with plan administrator.

The magistrate judge allowed plaintiffs to depose ARCO's in-house counsel, Anderson, about communications with the plan administrator before the lawsuit was filed because she found that Anderson "did previously perform in a fiduciary capacity toward the plaintiffs when he acted as legal counsel to the administrator of the ARRP/STAP during times prior to the institution of this suit."[30] The magistrate judge found, however, that after suit was filed "the mutuality of interests between the plaintiffs and Mr. Anderson, which is a prerequisite to the existence of the fiduciary exception to the attorney/client privilege, ceased to exist ... as the interests of the administrator, the remaining beneficiaries, and the plan itself, *and* the interests of the plan-beneficiaries diverged at that point."[31] The magistrate judge therefore held that discovery into Anderson's communications with the plan administrator after the suit was filed was "protected by the attorney-client privilege and/or the work

---

[29]R.Vol. 6, p. 660.

[30]Ruling at p. 7.

[31]Ruling at p. 8.

product doctrine."[32]

Plaintiffs argue that regardless of the lawsuit, the plan administrator was still passing on plaintiffs' claims, and the administrator's lawyer, Anderson, was still rendering advice to the administrator about these claims. According to plaintiffs, this advice, which dealt with plan administration, was no less discoverable just because a lawsuit had been filed. Plaintiffs were still plan beneficiaries and Anderson, as an attorney for the plan, still bore a fiduciary relationship toward them. Neither the magistrate judge in her ruling nor defendants in their brief cite any authority approving an exception to the rule that the attorney-client privilege is not implicated when plan members seek to discover communications between a plan's administrator and its lawyer merely because the interests of the plan administrator is not then coincidental to the interests of all plan beneficiaries.

We express no opinion on the scope of the attorney-client privilege, however, because even if plaintiffs were correct on this argument, we would still affirm the magistrate judge's decision. In addition to the attorney-client privilege, the magistrate judge found that discovery into Anderson's communications with plan administrator after plaintiffs' suit was filed was protected by the attorney work product doctrine. Plaintiffs have not challenged that ruling. Because the attorney work product doctrine fosters interests different from the attorney-client privilege, it may be successfully invoked against a pension plan beneficiary even though the attorney-client privilege is unavailable. *Helt v. Metropolitan District Comm'n,* 113 F.R.D. 7, 12 (D.Conn.1986) ("The plaintiff does "not stand in the same position with respect to the *attorney,* for whom the work-product rule is designed to benefit, as [he does to his] own trustees.' "). By failing to address this issue in their briefs, plaintiffs have abandoned it. *See, e.g., United States v. Lindell,* 881 F.2d 1313, 1325 (5th Cir.1989), *cert. denied,* 493 U.S. 1087, 110 S.Ct. 1152, 107 L.Ed.2d 1056 (1990). We therefore decline to disturb the magistrate judge's conclusion that discovery against Anderson was protected by the work product doctrine.

---

[32]*Id.*

## VI. CONCLUSION

For the foregoing reasons, we VACATE the judgment of the district court and REMAND this action for further consideration by the district court.