**Adelaide HERNANDEZ, Individually and as Administratrix of the Estate of Benancio (Ben) Moreno, Plaintiff,**

v.

**IGLOO PRODUCTS CORPORATION RETIREMENT PLAN and Wessie Moreno, Defendants.**

Civ. A. No. H–94–0712.

United States District Court, S.D. Texas.

Nov. 15, 1994.

---

Bernard John Hooks, Houston, TX, for plaintiff.

Maria Wyckoff Boyce, Baker & Botts, Houston, TX, for defendants.

### MEMORANDUM AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT

CRONE, United States Magistrate Judge.

Pending before the court is Defendant Igloo Products Corporation Retirement Plan's ("Igloo") Motion for Summary Judgment (Docket Entry # 13). Igloo seeks summary judgment on Plaintiff Adelaide Hernandez's ("Hernandez") action against Igloo and Defendant Wessie Moreno ("Wessie") to recover all unpaid retirement benefits accrued by Benancio (Ben) Moreno ("Moreno"). Hernandez asserts her cause of action both individually and as the administratrix of Moreno's estate. Having reviewed the motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that Igloo's motion should be granted.

### I. *Background.*

Moreno married Wessie in 1954 and separated from her in 1957. Although Moreno never divorced Wessie, he lived with Hernandez, also known as Lala Moreno, from 1957 until his death on January 17, 1989. At the time of his death, Moreno was employed by Igloo and was a participant in the Igloo Retirement Plan for Non–Union Employees, Igloo Retirement Plan, and Money Purchase Pension Plan.

All three of Igloo's retirement plans contain an automatic Special Surviving Spouse's Benefit for any married participant who has a vested interest in an accrued benefit. The surviving spouse's benefit is a 50% joint and survivor annuity paid to a surviving spouse of an employee who dies prior to retirement. This benefit can be declined or paid to another beneficiary if the benefit is waived in writing by both the participant and the participant's legal spouse and the waiver is witnessed by a retirement plan representative or a notary public. In the absence of such a waiver, the surviving spouse is automatically

entitled to receive the benefit on the date that the member's retirement benefits would normally commence. The amount of the Special Surviving Spouse's Benefit is calculated based on, among other things, the surviving spouse's birth date.

Igloo administers its retirement plans through a monitoring committee known as the "plan administrator." The plan administrator is authorized to make such rules and regulations as it deems necessary to carry out the provisions of the retirement plans. Under the plans, the plan administrator also determines any question arising in the administration, interpretation and application of the retirement plans, and its determination is conclusive and binding on all persons.

On June 20, 1979, Moreno signed a "Declination/Election" card designating Hernandez as his spouse and contingent annuitant for the Special Surviving Spouse's Benefit and electing a 100% regular joint and survivor annuity. Shortly after Moreno's death, Hernandez contacted Igloo requesting payment of all retirement benefits accrued by Moreno. The plan administrator determined, however, that Hernandez was not entitled to receive Moreno's retirement benefits because she was not the legal beneficiary. The administrator based its decision on the fact that Hernandez was not Moreno's legal spouse, and Wessie, who was his legal spouse, never waived her right to the surviving spouse's benefit before a plan representative or a notary public. Thus, the administrator concluded that Moreno's designation of Hernandez as his beneficiary on the "Declination/Election" card was null and void.

As a result, Igloo paid Wessie benefits from Moreno's Money Purchase Pension Plan in the amount of $603.55 on August 10, 1992, and from Moreno's Igloo Retirement Plan in the amount of $2,238.15 on August 19, 1992. On June 25, 1990, Wessie executed an agreement in which she agreed to release her claim and assign any and all pension disbursements payable to her under Moreno's retirement plans to Hernandez in exchange for $5,000.00. When Hernandez asserted her right to the benefits from Moreno's Retirement Plan for Non–Union Employees ("the Plan") by virtue of the agree-

ment, however, Igloo declined payment because the terms of the Plan expressly prohibit the assignment of benefits.

On January 24, 1994, Hernandez filed suit against Igloo seeking payment of the Special Surviving Spouse's Benefit under the Plan. On November 14, 1994, Hernandez filed a cross-claim against Wessie asserting contractual claims based on the assignment. Hernandez argues, however, that she is entitled to payment of the benefit directly from Igloo because Moreno designated her as the beneficiary on the "Declination/Election" card and Wessie waived her right to receive the surviving spouse's benefit when she assigned Hernandez her rights to Moreno's pension before a notary public. Hernandez further contends that the surviving spouse's benefit should be calculated using her birth date because she is the legal beneficiary under the Plan.

Igloo seeks summary judgment on the ground that it is Wessie, not Hernandez, who is the legal beneficiary of Moreno's pension rights. According to Igloo, a surviving spouse's benefit must be paid to the legal spouse of the decedent employee, unless both the employee and the legal spouse waive their rights to the benefit before a Plan representative or a notary public within the designated election period. Igloo argues that Wessie did not waive her rights to the surviving spouse's benefit within the applicable election period, and therefore, the retirement benefits accumulated under the Plan rightfully belong to Wessie.

## II. *Analysis.*

### A. *The Summary Judgment Standard.*

 Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, an-

swers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson v. Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. at 2514; *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to the nonmovant's case on which it bears the burden of proof at trial. *Celotex v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552.

B. *The Standard of Review.*

██ Under the Employee Retirement Income Security Act ("ERISA"), when a retirement plan gives its administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a reviewing court must evaluate the plan administrator's decision under an abuse of discretion standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Duhon v. Texaco, Inc.,* 15 F.3d 1302, 1305 (5th Cir. 1994); *Haubold v. Intermedics, Inc.,* 11 F.3d 1333, 1336–37 (5th Cir.1994); *Perdue v. Burger King Corp.,* 7 F.3d 1251, 1254 (5th Cir.1993); *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631, 636 (5th Cir.1992). A pension plan's grant of discretionary authority to the plan administrator, however, cannot be implied. *Id.* Rather, the abuse of discretion standard will be applied only when a retirement plan expressly confers on its administrator the power to construe the terms of the plan or to determine an applicant's eligibility for benefits. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. at 102, 109 S.Ct. at

949; *Haubold v. Intermedics, Inc.,* 11 F.3d at 1337; *Wildbur v. ARCO Chem. Co.,* 974 F.2d at 636; *Vasseur v. Halliburton Co.,* 950 F.2d 1002, 1006 (5th Cir.1992); *Pierre v. Connecticut Gen. Life Ins. Co.,* 932 F.2d 1552, 1556 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991).

██ The retirement plan at issue in this case explicitly grants its administrator the authority to determine any question arising in the administration, interpretation and application of the Plan. The Plan further provides that the administrator's decision is "conclusive and binding on all persons." Thus, while the Plan does not expressly use the words "discretion" or "discretionary authority," it gives the administrator the power to make an independent interpretation of the Plan's terms. It is well established that retirement plans are not required to use the words "discretion" or "discretionary authority" to confer discretionary authority upon the plan administrator. *Haubold v. Intermedics, Inc.,* 11 F.3d at 1337; *Wildbur v. ARCO Chem. Co.,* 974 F.2d at 637 (quoting *Block v. Pitney Bowes, Inc.,* 952 F.2d 1450, 1453 (D.C.Cir.1992)). Instead, a grant of authority which contemplates interpreting plan terms in a binding and conclusive manner is sufficient to invoke the abuse of discretion standard. *See Haubold v. Intermedics, Inc.,* 11 F.3d at 1337; *Wildbur v. ARCO Chem. Co.,* 974 F.2d at 637; *Block v. Pitney Bowes, Inc.,* 952 F.2d at 1454; *Jett v. Blue Cross & Blue Shield of Ala., Inc.,* 890 F.2d 1137, 1139 (11th Cir.1989). Accordingly, this court must determine whether Igloo's plan administrator abused its discretion when it declined to pay Moreno's retirement benefits to Hernandez.

██ Before a court can determine whether an administrator's denial of benefits was an abuse of discretion, it must ascertain the legally correct interpretation of the plan's provisions. *Haubold v. Intermedics, Inc.,* 11 F.3d at 1337; *Wildbur v. ARCO Chem. Co.,* 974 F.2d at 637; *Batchelor v. International Bhd. of Elec. Workers Local 861 Pension & Retirement Fund,* 877 F.2d 441, 444 (5th Cir.1989); *Goodman v. S & A Restaurant Corp.,* 821 F.Supp. 1139, 1144 (S.D.Miss. 1993). If the administrator did not give the

plan its legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion. *Haubold v. Intermedics, Inc.*, 11 F.3d at 1337; *Wildbur v. ARCO Chem. Co.*, 974 F.2d at 637; *Batchelor v. International Bhd. of Elec. Workers Local 861 Pension & Retirement Fund*, 877 F.2d at 444; *Goodman v. S & A Restaurant Corp.*, 821 F.Supp. at 1144. In answering the first question, a court must consider: (1) whether the interpretation is consistent with a fair reading of the plan; (2) whether there has been uniformity in construction of the plan; and (3) whether the interpretation results in any unanticipated costs to the plan. *Haubold v. Intermedics*, 11 F.3d at 1337; *Wildbur v. ARCO Chem. Co.*, 974 F.2d at 638; *Jordan v. Cameron Iron Works, Inc.*, 900 F.2d 53, 56 (5th Cir.1990), *cert. denied*, 498 U.S. 939, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990); *Goodman v. S & A Restaurant Corp.*, 821 F.Supp. at 1144 n. 7. If a reviewing court concludes that the administrator's interpretation of the plan is incorrect, it should also evaluate the internal consistency of the plan under the administrator's interpretation, any relevant regulations formulated by the appropriate administrative agencies, and the factual background of the determination for inferences of lack of good faith. *Wildbur v. ARCO Chem. Co.*, 974 F.2d at 638; *Batchelor v. International Bhd. of Elec. Workers Local 861 Pension & Retirement Fund*, 877 F.2d at 444.

## C. *Interpretation of the Plan.*

A review of the Plan in the instant case demonstrates that it is straightforward in its language. It establishes a Special Surviving Spouse's Benefit to protect the surviving spouse of a participant who dies prior to retirement. *See Hurwitz v. Sher*, 982 F.2d 778, 781 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2345, 124 L.Ed.2d 255 (1993) (quoting S.Rep. No. 98–575, 98th Cong., 2d Sess. 1 (1984), *reprinted in*, 1984 U.S.C.C.A.N. 2547, 2547). The Special Surviving Spouse's Benefit is a 50% joint and survivor annuity which is paid to the surviving spouse of a plan member if the member dies before becoming eligible to receive his pension. The surviving spouse's benefit is furnished only to the surviving spouse of members who have a vested interest in an accrued benefit and have performed at least one hour of service for Igloo on or after August 24, 1984. The Plan provides that in the event that a member dies before becoming eligible to receive retirement benefits, his surviving spouse will automatically receive one-half of the retirement income which the member would have received had he terminated service on the date of his death and began collecting retirement benefits on the date they normally would have been disbursed.

Section 6.3A of the Plan permits a member to waive the Special Surviving Spouse's Benefit or to designate a different beneficiary on or after the date that the member becomes fifty-five years old. The Plan expressly states, however, that an election to waive the benefit or to designate another beneficiary must be in writing and "consented to by the Member's spouse which consent is witnessed by a Plan representative or a notary public."

### 1. *Consent.*

In this dispute, Hernandez and Igloo agree that a member's election to designate a different beneficiary is invalid unless it complies with the requirements established in the Plan. Hernandez argues, however, that she is the legal beneficiary under Moreno's retirement plan and is entitled to receive the Special Surviving Spouse's Benefit. In support of her position, she asserts that both Moreno and Wessie, his legal spouse, have complied with the election requirements. Hernandez points to the fact that Moreno designated her as the legal beneficiary on his Declination/Election card and Wessie assigned her "any benefit which I [Wessie] may receive or become entitled to receive by virtue of my status as Moreno's legal wife from the Pension Benefits of Igloo Corporation/Quaker Oats/Anderson Clayton." Hernandez asserts that Wessie's assignment satisfies the consent requirement under the Plan because the Plan does not specify a deadline by which the member's spouse must consent in order for an election of another beneficiary to be valid.

Igloo contends, however, that no valid election by Moreno ever occurred, as his legal

spouse did not consent to his designation of an alternate beneficiary during the election period and he died before a valid spousal waiver could be obtained. Thus, according to Igloo, no alternate beneficiary or form of payment was properly elected under the terms of the Plan in conformity with applicable law.

Both ERISA and the Internal Revenue Code ("the Code") contain provisions addressing surviving spouse's benefits under pension plans. *See* 29 U.S.C. § 1055(b); 26 U.S.C. 401(a)(11); *see also Moore v. Philip Morris Companies Inc.*, 8 F.3d 335, 338 (6th Cir.1993); *Pedro Enter., Inc. v. Perdue*, 998 F.2d 491, 494 (7th Cir.1993); *Hurwitz v. Sher*, 982 F.2d at 781; *Estate of Altobelli v. IBM Int'l Business Mach. Corp.*, 849 F.Supp. 1079, 1081 (D.Md.1994); *Davis v. College Suppliers Co.*, 813 F.Supp. 1234, 1237 (S.D.Miss.1993). The 1984 amendments to ERISA require all retirement plans to provide its members with an opportunity to "elect at any time during the applicable election period to waive the ... qualified preretirement survivor annuity form of benefit." 29 U.S.C. § 1055(c)(1)(A)(i). Under the Code and ERISA, the "applicable election period" is the period beginning "on the first day of the year in which the participant attains the age 35 and ends on the date of the participant's death." 26 U.S.C. § 417(a)(6)(B); 29 U.S.C. § 1055(c)(6).

▮ Although the Igloo Plan provides that the applicable election period begins on the day that the member reaches age fifty-five, it does not state when the election period ends. However, because a member cannot "elect" to waive a benefit when he is dead, the election period, by necessity, cannot extend beyond the date of the member's death. Therefore, under the Plan, a member's spouse must consent to his designation of another beneficiary between the date the member reaches age fifty-five and the date of his death. *See generally Moore v. Philip Morris Co., Inc.*, 8 F.3d at 338; *Davis v. College Suppliers Co.*, 813 F.Supp. at 1237. Otherwise, there can be no valid "election" under the Plan.

In the instant case, Moreno died on January 17, 1989, at age sixty-five. Wessie did not execute a release or an agreement to assign her rights to the Special Surviving Spouse's Benefit under the Plan until June 25, 1990. Thus, Wessie did not consent to Moreno's election within the applicable election period, and Moreno's attempted designation of Hernandez as his legal beneficiary was without legal effect. Accordingly, under the Plan, Wessie is the legal beneficiary of Moreno's Special Surviving Spouse's Benefit, and the amount of the benefit to be paid must be calculated based on Wessie's birth date.

2. *Assignment of Rights.*

▮ Hernandez argues alternatively that even if Wessie were the rightful beneficiary of Moreno's retirement benefits, Hernandez is entitled to receive the benefits by virtue of Wessie's release and assignment of June 25, 1990. The Plan, however, specifically prohibits a beneficiary from assigning his rights to a benefit under the Plan. Section 12.3 of the Plan states:

> [N]o benefit under the Plan shall be subject to any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any action by way of anticipating, alienating, selling, transferring, assigning, pledging, encumbering, or charging the same shall be void and of no effect.

Consequently, Hernandez is not entitled to enforce Wessie's assignment against Igloo. Instead, as to Igloo, Wessie remains Moreno's legal beneficiary under the Plan, entitling her to the Special Surviving Spouse's Benefit. While perhaps inequitable under the facts of this case, any other result would place the Plan administrator in the precarious position of being required to delve into the most intimate aspects of an employee's life to determine whether his legal spouse is a fitting or appropriate recipient of his retirement benefits. Such an inquiry is mandated neither by the Plan nor by controlling law. *See Hurwitz v. Sher*, 982 F.2d at 781–82; *Davis v. College Suppliers Co.*, 813 F.Supp. at 1237–38.

D. *Abuse of Discretion.*

The court concludes that the Plan administrator correctly interpreted the provisions of

the Plan addressing survivor's benefits. Consequently, the administrator did not abuse its discretion when it declined to pay Moreno's survivor's benefits to Hernandez. Therefore, the administrator's decision must stand.

III. *Conclusion.*

The affidavits and documents proffered in this case, when coupled with the controlling statutes and legal precedent, establish that there is no genuine issue of material fact with respect to Hernandez's claims against Igloo and that Igloo is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson v. Liberty Lobby Inc.,* 477 U.S. at 257, 106 S.Ct. at 2514.

Accordingly, IT IS ORDERED that Igloo's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that:

1. The benefits due from the Retirement Plan for Non–Union Employees of Igloo Corporation shall be calculated on the basis of the birth date of Wessie Moreno and payable in a lump sum, which benefits presently total $44,505.64;

2. Igloo is to deposit the sum of $44,-505.64 in the registry of the court within five (5) business days of the date of this Order;

3. All claims against Igloo are dismissed with prejudice; and

4. Igloo is discharged and released from all obligations to pay any benefits from the Retirement Plan for Non–Union Employees of Igloo Corporation, the Igloo Products Corporation Retirement Plan, and the Money Purchase Pension Plan of Igloo Corporation to Wessie Moreno, Adelaide Hernandez (a/k/a Lala Moreno), the Estate of Benancio Moreno, or their heirs or assigns.

In view of the contractual claims asserted by Hernandez against Wessie, the relative rights of Wessie and Hernandez to the monies deposited in the registry of the court will be determined at a later date, as will the question of attorney's fees.