**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 21, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-31168

RAY WORTHY; Et Al,

Plaintiffs,

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, Dock Loaders and
Unloaders of Freight Cars and Barges, Local 854, AFL-CIO

Plaintiff - Appellant

versus

NEW ORLEANS STEAMSHIP ASSOCIATION / INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION, AFL-CIO PENSION PLAN,
including welfare, vacation, holiday funds and royalty pay;
NEW ORLEANS EMPLOYERS INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, AFL-CIO, PENSION, WELFARE, VACATION AND HOLIDAY
FUNDS, incorrectly named as "New Orleans Steamship Association
International Longshoremen's Association;" AMERICAN FEDERATION
OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, Pension Plan
including Welfare, Vacation, Holiday Funds and Royalty Pay;
RICHARD TEISSIER, Trustee; C G MILLER, Trustee; WIN NIEMAN,
Trustee; SID HOTARD, Trustee; MAX SANDERS, Trustee; JAMES CAMPBELL,
Trustee; JAMES MCCLELAND, Trustee; LLOYD IRVIN; DWAYNE BOUDREAUX,
Trustee; MARK ELLIS, Trustee; THOMAS R DANIEL, Administrator

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, Chief Judge, HIGGINBOTHAM and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Ray Worthy ("Worthy"), president of the Dock Loaders and Unloaders of Freight Cars and Barges, International Longshoremen's Association, AFL-CIO ("Local 854") filed suit against the New Orleans Steamship Association/ International Longshoremen's Association AFL-CIO, along with its trustees (collectively, "New Orleans Steamship" or "Association") which oversees the pension, welfare, vacation, and holiday plan for Local 854 employees (the "Trust"); the Trustees of the Trust; and, the administrator of the Trust, Thomas Daniel ("Daniel"). Local 854 alleged violations of the Employment Retirement Income Security Act ("ERISA"), the Taft-Hartley Act, and the Labor Management Relations Act ("LMRA"). New Orleans Steamship filed a motion for summary judgment that the district court granted. Local 854 now appeals. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellant, Local 854 is a labor organization located in New Orleans, Louisiana. Defendant-Appellee, New Orleans Steamship is an unincorporated association. New Orleans Steamship, guided by administrator Daniel, oversees the Trust between the Mid-Gulf Association of Stevedores, Inc.[1] and Local 854. International Longshoremen's Association Locals 3000, 1497, 2036 and 3033 (collectively, "Unions") are also parties to the Trust.

The Trust establishes pension, welfare, vacation, and holiday plans and is governed by the ERISA, 29 U.S.C. § 1001, et al. (2000), the LMRA, 29 U.S.C. § 186(e) (2000), the law of contracts,

---

[1]Mid-Gulf Association of Stevedores, Inc. was formerly known as the New Orleans Steamship Association.

2

and the trust code of the State of Louisiana. The Declaration of Trust which was written in 1957 and created the Trust, provides that the employers, represented by Mid-Gulf Association of Stevedores and the Unions would each appoint an equal number of Trustees to the Board of Trustees ("the Board"). Initially, the Trust stipulated that the parties would each name six Trustees and four alternates who could substitute for one or more of the named Trustees. Eventually, the Trust was amended to reduce the number of Trustees appointed to the Board. In February 2002, the Trust was again amended to allow the employers and the Union to each appoint five Trustees and to eliminate all alternative Trustee positions.

Local 854 is one of the original signatories to the Trust and, until 1989, was represented on the Board. In 1989, however, the president of Local 854 retired from his position on the Board and a representative of Local 3033 was placed on the Board in his place. In May 1997, Worthy, who was president of Local 854 at the time, was appointed as one of the two alternative Trustees. In 1999, the Union Co-Chairman of the Board wrote Daniel advising him that because Worthy did not attend any meetings during his tenure, he was being replaced as an alternate Trustee.

In December 2001, Local 854 and Worthy, filed suit in federal district court against the Trust that oversees the pension, welfare, vacation, holiday, and royalty pay for Local 854's employees, also known as the New Orleans Steamship; the Trustees of the Trust; and Daniel. In its first amended Complaint, Local 854 alleged that New Orleans Steamship: (1) failed "to abide by one or more constitutions and bylaws," the Restatement of Agreement and Declaration of Trust (the "Trust document"), including amendments, and the Summary Plan Description; (2) unlawfully denied pension, welfare, vacation, holiday and other benefits, which caused the trustees to breach their fiduciary duties to the beneficiaries of the trust; (3) deprived Worthy of his rights as a member of a

3

labor organization; and (4) excluded Local 854 from the Board of Trustees, thus causing unequal representation of employers and union in the administration and operation of the Trust, as well as implementing policies without a Local 854 representative's required signature. Local 854 also complained that Daniel failed to obtain Worthy's signature, in his capacity as representative of Local 854, on Amendments 12 through 15 of the Trust, thus rendering each amendment null and void and causing the Trustees to breach their fiduciary duties; and the 1991 through 2001 Memorandum Agreements and Royalty Authorizations to the 1972 Royalty Agreement, despite that Local 854 is a principal to that agreement.[2]

In October 2002, the district court held the final pre-trial conference on this matter. As part of the trial preparation order issued that same day, the court granted New Orleans Steamship's motion for summary judgment with respect to all claims asserted by Local 854 and Worthy (as its representative), and denied Local 854's motion for preliminary injunctive relief and declaratory judgment with respect to these claims. In addition, the court took under advisement New Orleans Steamship's request for summary judgment with respect to Worthy's individual claim for benefits.

In November 2002, the district court filed written reasons in support of its October order. With respect to all claims asserted by Local 854 and Worthy, the district court granted New Orleans Steamship's summary judgment motion and denied Local 854's motion for declaratory judgment and

---

[2] In April 2002, Local 854 moved for injunctive and declaratory relief which reflected the claims raised in its first Amended Complaint, requesting the district court to "specify the relationship between Local 854 and [New Orleans Steamship] in addition to [New Orleans Steamship's] including Local 854 on the trustee board; change the procedure for choosing trustees; cease amend[ing] the trust without the input and required signatures of all unions; restore Mr. Worthy's benefits for the time period of 1998 through 2001; and cease operating the royalty fund without the input and required signatures of all the principals of the fund."

preliminary injunctive relief. On appeal, Local 854 challenges the district court's order regarding its claims that New Orleans Steamship breached its fiduciary duties under the Trust.

DISCUSSION

I.

We review the district court's order granting summary judgment <u>de novo</u> employing the same rules that were used in the district court. <u>See</u> <u>Hansen v. Cont'l Ins. Co</u>., 940 F.2d 971, 975 (5th Cir. 1991). Summary judgment is only appropriate when there are no genuine issues of material fact and, as a matter of law, the moving party is entitled to summary judgment. <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

II.

The district court found that Local 854 failed to raise a genuine issue of material fact as to New Orleans Steamship's alleged breach of fiduciary duties under ERISA. The district court concluded that New Orleans Steamship did not violate ERISA because the word "union" was interpreted by New Orleans Steamship to mean a majority of the signatory unions, and thus there was no requirement for Local 854 to be involved in decisions. Also, having evaluated trust administrator Daniel's interpretation of the language of the Trust document, the district court found his interpretation to be "legally correct." Local 854 challenges the district court's grant of summary judgment to New Orleans Steamship regarding its fiduciary duties. Local 854's basic contentions are that New Orleans Steamship breached its fiduciary duties under ERISA by failing: (1) to provide

5

Local 854 with a position on the Board; (2) to get signatures of approval by Local 854 for trust amendments twelve through fifteen; and (3) to get signatures of approval by Local 854 as a principle to the Royalty Escrow Account. We address each argument in turn.

First, we conclude that nothing in the Trust document guarantees Local 854 a place on the Board. The plain language of the Trust document does not support the extension of a contractual right to Local 854 that would entitle it to continuous representation on the Board. New Orleans Steamship contends that the original authors of the Declaration of Trust did not intend for each original signatory union to have a position on the Board and that no portion of the Trust document or practice of the Board indicates that each original union signatory was entitled to a position on the Board at all times. We agree. There is no language in the Trust document which indicates that Local 854 is required to maintain a position on the Board in perpetuity because it was an original signatory to the Trust.

Moreover, the Trust document does not provide express or implied language that all of the member Unions must participate on the Trustee Board. For example, in Local 169, Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Teamsters Health & Welfare Fund of Phila. & Vicinity, the trust document at issue specifically defined "union" to include only the original signatory local unions, meaning that only those unions would participate in the decisions concerning the appointment of trustees. 327 F. Supp. 260, 262 (E.D. Pa. 1971) ("In the Original Declaration of Trust, where parties to the agreement are listed, it is provided that the seven local unions entering into the agreement shall be referred to as 'UNION'."). In this case, however, such an express clause in the Trust document defining the scope of "union" does not exist. Instead, the language of the Trust document supports New Orleans Steamship's interpretation. Article 2 provides

6

that the Union and the Association, i.e., the settlors are to appoint an equal number of Trustees each year. At the time the Trust document was executed, the Union and the Association each appointed six trustees. Local 854 was one of eleven original signatories to the Trust. Thus, the original authors of the Trust document cannot have contemplated that each signatory member is guaranteed a position on the Board.

Second, we conclude that because a proposed Trust amendment does not require unanimity amongst all unions signing the Trust, Local 854's assertion that New Orleans Steamship breached its fiduciary duties by failing to obtain approval from Local 854 for amendments twelve through fifteen raises no genuine issues of material fact. Local 854 interprets the use of the word "union" in Article 19 of the Trust document to mean that all of the unions are required to execute an amendment to the Declaration.[3] Trust administrator Daniel interpreted "the union" to mean a majority of the unions. The legality of the trust administrator's interpretation of the Trust significantly affects this issue. In the ERISA context, when trust administrators are provided with discretion "to construe the terms of the plan," these interpretations are reviewed under an abuse of discretion standard. See Wilbur v. Arco Chem. Co. 974 F.2d 631, 637 (5th Cir. 1992) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). In this case, the language in the Trust document is explicit that the administrator, who is supervised by the Board, is vested with discretionary authority to construe the plan.[4] Id. ("Discretionary authority cannot be implied; an administrator has no discretion to determine

---

[3] Article 19 provides:
This Agreement and Declaration of Trust may be amended by joint actions of the Trustees, the Union, and the New Orleans Steamship Association representing the Employers.

[4] Article 5 provides in relevant part:
The Trustees shall have the power to construe the provisions of the Pension, Welfare, Vacation and Holiday Plans which shall be formulated pursuant hereto, and the terms used

7

eligibility or interpret the plan unless the plan language expressly confers such authority on the administrator.").

We employ a two-part test when applying the abuse of discretion standard. First, we must identify the legally correct interpretation of the plan. See Wilbur, 974 F.2d at 637. If we find that the plan administrator failed to provide a "legally correct" interpretation, then second, we determine whether the administrator's decision constitutes an abuse of discretion. Id. In answering the first question, we consider three factors: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." Id. at 637-38. Because we determine that the administrator's interpretation is legally correct, we do not reach the second inquiry.

After reviewing the record and the parties' arguments, we are satisfied that Daniel's interpretation of the Trust is legally correct. Local 854 does not present evidence nor cite to specific Trust provisions indicating that Daniels failed to give the Trust a uniform construction or that his interpretation is inconsistent with a fair reading of the Trust. Further vitiating Local 854's assertion is that the provisions of the Trust indicate that agreement of the "union" should be interpreted as an agreement of the majority of the trustees of the local unions. For example, in Article 3, the Trust document provides that election of the Co-Chairman from the Union and the Co-Chairman from the Association are by "majority vote." To transact business, Article 9 requires a "quorum" to be present

---

herein and in said Pension, Welfare, Vacation and Holiday Plans, and any construction adopted by the Trustees shall be binding upon all parties hereto. The Trustees shall also have authority to review, from time to time, the benefits provided by said Pension, Welfare, Vacation and Holiday Plans, and to increase or decrease such benefits to such extent as in their prudent judgment and discretion they shall deem advisable, giving due regard to the financial resources of the Trust.

at a meeting of the Board and that the exercise of any right or power granted to the Trustees is to be by majority vote of those Trustees present.

As the district court adeptly analyzed, there would be great unanticipated costs to interpreting the Trust language as Local 854 urges, i.e., requiring unanimous approval of the signatories prior to amending the Trust. In sum, the process of obtaining unanimous approval would be tedious and would create an obstacle to effective administration of the plan. Because Local 854 does not raise a genuine issue of fact disputing the legal correctness of Daniel's interpretation, we conclude that summary judgment for New Orleans Steamship is proper.

Third, we conclude that Local 854's claim that the Trust breached its fiduciary duty by not obtaining a signature of approval by Local 854 as a Principal to the account is not justiciable. The justiciability of this claim depends on whether the judiciary represents the branch of federal government best-suited to address Local 854's particular grievance. Because this claim principally arises out of an interpretation of a collective bargaining agreement, Local 854's proper remedy was not to file an ERISA claim but to file an unfair labor practice charge before the National Labor Relations Board - an agency within the executive branch of the federal government. See 29 U.S.C. § 160 (empowering the NLRB to adjudicate claims of unfair labor practices); Boire v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 479 F.2d 778, 783 n.4 ("[C]harges of unfair labor practices are within the jurisdiction of the NLRB ... and not within the jurisdiction of this Court."). Local 854's claim is not in a form amenable to resolution through the judicial process, but rather would be best decided by the executive branch of government.

III.

Local 854's assertion that the district court erred when it granted summary judgment to New Orleans Steamship on Local 854's claim against Daniel for false swearing before a notary public is waived because it was raised for the first time in its reply brief. See Blumberg v. HCA Mgmt. Co., 848 F.2d 642, 646 (5th Cir. 1988) (informing that this Court has "repeatedly held that we will not consider alleged errors raised" for the first time in a reply brief). Moreover, Local 854's assertion that New Orleans Steamship did not operate the Trust and plans for the benefit of the beneficiaries, permitting certain sole proprietors to contribute to the plan on behalf of themselves as employees and receive plan assets, was not raised before the district court; and therefore, was never ruled upon in the Final Judgment. As a general rule, this court ignores claims that are not raised formally at the trial level. E.g., McLean v. Int'l Harvester Co., 902 F.2d 372, 374 (5th Cir. 1992). Furthermore, because Local 854's sole proprietor argument does not involve a purely legal question or failure to consider it would not result in a miscarriage of justice, we do not consider it on appeal. See Atlantic Mut. Ins. Co. v. Truck Ins. Exchange, 797 F.2d 1288, 1293 (5th Cir. 1986) ("An issue raised for the first time on appeal generally is not considered unless it involves a purely legal question or failure to consider it would result in a miscarriage of justice.").

CONCLUSION

Thus, we affirm the district court's grant of summary judgment to New Orleans Steamship and denial of Local 854's motion for injunctive and declaratory relief regarding Local 854's claims that New Orleans Steamship breached its fiduciary duties under ERISA.

AFFIRM.

10